UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RAUL ARAMBULA GARCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. ED CV 08-1477-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 27, 2008, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 29, 2008, and November 25, 2008. The parties filed a Joint Stipulation on June 22, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on May 25, 1959. [Administrative Record ("AR") at 38, 125.] He has a high school education from Mexico [AR at 39, 137], and past relevant work experience as a construction site machine operator, a cook, and an agricultural worker. [AR at 77-79, 141, 194.]

On May 18, 2004, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging he has been unable to work since August 3, 2001, due to, among other things, back and shoulder problems. [AR at 125-27, 130-46.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 89-103, 107.] A hearing was held on April 27, 2006, at which plaintiff appeared with counsel and testified, through an interpreter, on his own behalf. A medical expert also testified. [AR at 33-59.] A supplemental hearing was held on October 13, 2006, at which plaintiff appeared with counsel and testified again, through an interpreter, on his own behalf. A vocational expert and a medical expert also testified. [AR at 60-85.] On December 7, 2006, the ALJ determined that plaintiff was not disabled. [AR at 17-28.] When the Appeals Council denied plaintiff's request for review on August 18, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9, 16.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since August 3, 2001, the alleged onset date of the disability.[1] [AR at 22.] At step two, the ALJ concluded that plaintiff "has the following severe impairments: shoulder tendonitis, disorder of the lumbar spine, disorder of the cervical spine, and depression." [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 23.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] "to perform a range of light work as follows:"

> able to lift and/or carry up to 20 pounds occasionally and up to ten pounds frequently; has limitations in his ability to push and pull consistent [with] the limitations for lifting and carrying; is able to stand and/or walk for six hours and sit for eight hours during an eight-hour workday; must have a sit/stand option in which he is allowed to change position for one to three minutes each hour; can occasionally climb stairs, balance, bend or stoop, crouch, kneel, crawl, and reach above his shoulder or head with either upper extremity; cannot hold his head in a fixed position for more than one hour without changing position for one to three minutes; can frequently move his neck to 50 percent of his range of motion and can occasionally move his neck to extreme range of motion; can occasionally operate foot controls with his left lower extremity; can do simple, repetitive tasks; cannot have intense interpersonal contact with co-workers, supervisors, or the general public; cannot perform high production, high quota, or rapid assembly line work;

---

[1] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through December 31, 2005. [AR at 22.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

cannot perform work involving close deadlines; and cannot perform work involving greater than ordinary stress.

[AR at 23-27.] At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work. [AR at 27.] At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that plaintiff can perform. [AR at 27-28.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 28.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly evaluate his mental impairments, and that the Commissioner failed to provide clear and convincing reasons for disregarding the findings of Dr. Tushar Doshi, plaintiff's treating physician. [Joint Stipulation "JS" at 4-8, 10-14, 16-17.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    THE ALJ'S CONSIDERATION OF PLAINTIFF'S MENTAL IMPAIRMENTS**

Plaintiff argues that the ALJ failed to properly consider the findings of Dr. Ana L. Nogales, plaintiff's treating psychologist, in considering the extent and disabling impact of plaintiff's mental impairments. [JS at 4-8, 10-11.] The medical evidence indicates that after sustaining a work-related injury in July 2000, plaintiff experienced various physical and psychological symptoms including, among others, back pain and stiffness; shoulder and neck pain; insomnia; muscle aches; difficulty standing, bending, and sitting for prolonged periods of time; anxiety; and depression. [See, e.g., AR at 197, 199, 249, 250, 264, 313-15, 319-24, 333-38, 376-81, 493-94, 508.]

On October 8, 2002, and April 29, 2003, Dr. Nogales prepared reports concerning plaintiff's mental impairments and limitations. [AR at 344-67, 371-97.] In the October 8, 2002, report, Dr. Nogales noted that plaintiff reported, among other symptoms, difficulty sleeping, a decrease in appetite, a loss of energy, difficulty concentrating and carrying out daily activities, anxiety, anger, and depression, all which plaintiff attributed to his work-related injuries. [AR at 376-81.] Dr.

1  Nogales diagnosed him with a mood disorder due to a general medical condition. [AR at 381.]
2  With regard to work restrictions, she opined that plaintiff must not work under his previous
3  manager and "must avoid more than the ordinary amounts of emotional stress." [AR at 384.]
4        On April 29, 2003, Dr. Nogales completed a second report in which she revised her findings
5  concerning plaintiff's mental impairments and limitations. [AR at 344-67.] She noted that plaintiff
6  reported essentially the same symptoms that he described in October 2002, and that he also
7  reported experiencing panic attacks during which he has heart palpitations and difficulty breathing.
8  [AR at 346-49.] Dr. Nogales again diagnosed plaintiff with mood disorder due to a general medical
9  condition and asserted that he should not work for his previous manager or in an environment with
10 more than an ordinary amount of emotional stress. [AR at 350-52.] In addition, she opined that
11 plaintiff should not work under close deadlines or with "contentious, unreasonable, or otherwise
12 exasperating members of the public." [AR at 352.] She also opined that plaintiff has slight or
13 slight to moderate[3] impairments in his ability to: 1) comprehend and follow instructions (including
14 maintaining attention and concentration, applying common sense, carrying out instructions, and
15 adapting to situations); 2) perform simple and repetitive tasks (including asking questions and
16 requesting assistance, performing routine activities, and remembering locations and procedures);
17 3) maintain an appropriate work pace (including performing activities on schedule, maintaining
18 regular and punctual attendance, and not taking excessive breaks); 4) perform complex or varied
19 tasks (including synthesizing and analyzing data, and performing jobs with precise standards, and
20 performing a variety of duties without losing efficiency); 5) relate to other people beyond giving and
21 receiving instructions (including getting along with peers, performing activities requiring speaking
22 with others, responding appropriately to supervisors' criticism); 6) influence other people (including
23 convincing and directing others, understanding and using words effectively, and interacting
24 appropriately); 7) make decisions, generalizations or evaluations without supervision (including
25 recognizing potential hazards and precautions, remembering and understanding detailed

---

[3] Dr. Nogales defined a "slight" impairment as one that "limits [but] does not preclude the function," and a "moderate" impairment as one that "markedly limits the function." [AR at 356.]

instructions, and making independent decisions); and 8) accept and carry out responsibility for direction, control and planning (including independently setting realistic goals and instructing or supervising others). [AR at 356-60.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ is required to provide an explicit explanation, supported by evidence in the record, of the weight given to treating physicians' medical opinions. 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling 96-2p[4] ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

In the decision, the ALJ only explicitly addressed Dr. Nogales' findings from her October 2002 report. [AR at 25.] Specifically, the ALJ noted that Dr. Nogales opined that plaintiff "should not work under the supervision of his previous manager . . . but could perform work that did not involve 'more than the ordinary amounts of emotional stress.'" [AR at 25; quoting AR at 384.] However, the ALJ failed to even mention, let alone explain the weight that he afforded, Dr. Nogales' April 2003 report. To the extent the ALJ rejected Dr. Nogales' April 2003 findings concerning plaintiff's limitations, and instead credited the findings of another physician, the ALJ

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

was required to provide specific and legitimate reasons for doing so based on substantial evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993). To the extent that the ALJ implicitly adopted some but not all of Dr. Nogales' April 2003 opinion regarding plaintiff's limitations, that too was erroneous. Specifically, the ALJ's RFC determination appears to include Dr. Nogales' April 2003 conclusions that plaintiff cannot work with exasperating members of the public, under close deadlines, or in an environment with more than ordinary stress, and that his ability to perform complex or varied tasks is impaired. [See AR at 23.] However, there is no indication that the ALJ took into account the remaining specific limitations set forth in Dr. Nogales' April 2003 assessment, and he provided no explanation why certain limitations were adopted while others were not. [See AR at 356.] By ignoring some of the limitations set forth in Dr. Nogales' April 2003 assessment, the ALJ effectively rejected a portion of her medical opinion. It follows, therefore, that the ALJ did not provide sufficient reasons for the rejection. See SSR 96-2p; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted). As such, remand is warranted so that the ALJ can explicitly weigh and properly credit or reject Dr. Nogales' April 2003 findings.

**B.    DR. DOSHI'S MEDICAL OPINION**

Plaintiff asserts that the Commissioner abused his discretion in not remanding plaintiff's case after he submitted additional medical evidence to the Appeals Council (reflecting Dr. Doshi's opinion regarding plaintiff's functional limitations) after the ALJ's unfavorable decision but before the Council denied plaintiff's request for review. [JS at 11-14, 16-17.]

Dr. Doshi apparently treated plaintiff's orthopedic injuries since March 2005. [AR at 525-47, 616-20.] His treatment records indicate that he diagnosed plaintiff with "lumbosacral sprain/strain with left lower radiation" and repeatedly found him to be "temporarily totally disabled." [AR at 526, 529, 532, 535, 537, 541, 545.] On April 5, 2007, Dr. Doshi completed a Physical Residual

Functional Capacity Questionnaire, in which he assessed plaintiff's functional limitations resulting from his orthopedic conditions. [AR at 616-20.] Dr. Doshi opined that due to plaintiff's "physical [and] mechanical symptoms he is unable to work." [AR at 617.] He also concluded that plaintiff can walk less than one city block without rest, lift up to ten pounds occasionally, sit for 45 minutes continuously and stand for 30 minutes continuously at one time, sit for less than two hours total in an eight-hour workday, and stand and/or walk for less than two hours in an eight-hour workday. [AR at 617-19.] Dr. Doshi opined that if he were to work, plaintiff would need a job that would permit him to shift positions at will from sitting, standing or walking; that he would need to take unscheduled breaks to walk around and shift positions for approximately five minutes every 15 minutes; and that he would likely miss work more than three times each month due to his impairments or medical treatment. [AR at 618-20.]

As remand is warranted so that the ALJ can reconsider Dr. Nogales' medical assessments, the Court will exercise its discretion not to address whether the Commissioner abused his discretion, as plaintiff asserts, in failing to remand in light of the additional medical records that plaintiff submitted to the Appeals Council after the ALJ's decision. [See JS at 12; AR at 614-20.] Rather, all of the medical evidence (including any medical evidence not previously considered by the ALJ) must be re-examined in light of the Court's remand Order.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to properly consider Dr. Nogales' findings concerning plaintiff's mental limitations, and to consider the updated medical evidence. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

1     Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

    **This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 7, 2010

                          /s/ Paul L. Abrams
                          PAUL L. ABRAMS
                    UNITED STATES MAGISTRATE JUDGE